1  **MCGUIREWOODS LLP**
   Adam F. Summerfield (SBN #259842)
2  1800 Century Park East
   8th Floor
3  Los Angeles, CA 90067-1501
   Telephone: 310.315.8200
4  Facsimile: 310.315.8210

5  Attorneys for Defendants Bank of America, N.A.; The Bank of New York Mellon
   FKA The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc.,
6  Alternative Loan Trust 2005-58, Mortgage Pass-Through Certificates, Series 2005-
   58; and ReconTrust Company, N.A.
7

8                  UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

10

11  EMILIO VASQUEZ,                          | CASE NO.
12              Plaintiff,
13      vs.                                   **NOTICE OF REMOVAL BY
14  BANK OF AMERICA, N.A.; THE              DEFENDANT BANK OF
    BANK OF NEW YORK MELLON                AMERICA, N.A., PURSUANT TO 28
15  FKA THE BANK OF NEW YORK, AS           U.S.C. § 1332
    TRUSTEE FOR THE
16  CERTIFICATEHOLDERS OF                  [Diversity Jurisdiction]
    CWALT, INC., ALTERNATIVE
17  LOAN TRUST 2005-58, MORTGAGE
    PASS-THROUGH CERTIFICATES,
18  SERIES 2005-58; RECONTRUST
    COMPANY, N.A.; AND DOES 1 TO
19  10, inclusive,
20              Defendants.
21

22      **TO ALL ATTORNEYS OF RECORD, THE CLERK OF THE ABOVE-**

23  **ENTITLED COURT, AND THE HONORABLE UNITED STATES DISTRICT**

24  **JUDGE, AS ASSIGNED:**

25      **PLEASE TAKE NOTICE** that Defendant Bank of America, N.A.

26  ("BANA") hereby provides this Notice of Removal pursuant to 28 U.S.C. §§1332,

27  1441, and 1446, based on diversity of citizenship. The action is hereby removed to

28  this Court from the State Court, as more particularly set forth below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### THE STATE COURT ACTION

1.    On December 1, 2014, 2014, Plaintiff Emilio Vasquez ("Plaintiff") commenced an action entitled *Trigueiro v. Bank of America, N.A., et al.*, in the Superior Court of the State of California, County of Orange, Case No. 30-2014-00759017-CU-OR-CJC (the "State Court Action").  A copy of the complaint is attached hereto as <u>Exhibit A</u>.  Attached collectively hereto as <u>Exhibit B</u> are all other documents in BANA's possession that were filed in the State Court Action.  BANA was personally served on December 3, 2014.

### DIVERSITY OF CITIZENSHIP AND VENUE

2.    This Court has jurisdiction of this case under 28 U.S.C. § 1332 because the citizenship of Plaintiff is entirely diverse from the citizenship of all necessary Defendants, and the amount in controversy exceeds $75,000.00.  As shown below, Plaintiff is a citizen of California; Defendant BANA is a citizen of North Carolina; and Defendant The Bank of New York Mellon ("BNYM") is a citizen of New York. Defendant ReconTrust Company, N.A. ("ReconTrust") is a citizen of California, but its citizenship should be ignored for the purpose of the diversity jurisdiction analysis.

**A.    Plaintiff is a Citizen of California.**

3.    BANA is informed and believes that at all relevant times Plaintiff was and is domiciled in, and is a citizen of, the United States and the state of California. In *Kanter v. Warner-Lambert Co.,* the Ninth Circuit held that a "person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."  265 F.3d 853, 857 (9th Cir. 2001).  Plaintiff alleges that he "is, and at all relevant times mentioned herein was a resident of Orange County, California, residing at: 16702 Mount Baxter Circle, Fountain Valley, California 92708.  Ex. A, ¶ 1.  Thus, Plaintiff is a citizen of California for diversity purposes.

**B.    BANA is a Citizen of North Carolina.**

1    4.    BANA is a national banking association pursuant to federal law.

2  BANA's main office is located in North Carolina.  Accordingly, BANA is a citizen

3  of North Carolina for diversity purposes.  23 U.S.C. § 1348 ("[a]ll national banking

4  associations shall, for the purposes of all other actions by or against them, be

5  deemed citizens of the States in which they are respectively located."); *see also*

6  *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) ("A national bank, for § 1348

7  purposes, is a citizen of the State in which its main office, as set forth in its articles

8  of incorporation, is located."); *Rouse v. Wachovia Mortgage, FSB*, 747 F.3d 707,

9  709 (9th Cir. 2013) (under 28 U.S.C. § 1348, a national bank is a citizen only of the

10  state in which its main office is located).

11    **C.    BNYM is a Citizen of New York.**

12    5.    Defendant BNYM is a New York corporation with its headquarters

13  and principal place of business in New York, New York.  Therefore, pursuant to 12

14  U.S.C. § 1332(c), BNYM is deemed a citizen of New York for purposes of diversity

15  jurisdiction.

16    **E.    ReconTrust's Citizenship is to be Ignored for Purposes of the**

17    **Diversity Jurisdiction Analysis.**

18    6.    The citizenship of ReconTrust, which Plaintiff alleges is located at

19  1800 Tapo Canyon Road, Simi Valley, California 96063 (Ex. A, ¶ 4), is irrelevant to

20  the diversity inquiry because it has been fraudulently joined in this action.

21  "[F]raudulently joined defendants will not defeat removal on diversity grounds."

22  *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1988); *Morris v.*

23  *Princess Cruises, Inc.*, 236 F.3d 1061, 1067-68 (9th Cir. 2001) ("one exception to

24  the requirement of complete diversity is where a non-diverse defendant has been

25  fraudulently joined.").  Specifically, when a trustee under a deed of trust has not

26  exceeded its role in that capacity, and no other claims are asserted against it outside

27  of that role, it "is a sham defendant whose naming does not defeat diversity

28

1   jurisdiction." *Rieger v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 58232, at
2   *18 (N.D. Cal. 2013).  Joinder of a non-diverse defendant is fraudulent if "the
3   plaintiff fails to state a cause of action against the [non-diverse] defendant, and the
4   failure is obvious according to the settled rules of the state." *Hamilton Materials,*
5   *Inc. v. Dow Chem. Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

6       7.      Fraudulent joinder is also conclusive where it is demonstrated that
7   "there is no possibility that the plaintiff will be able to establish a cause of action in
8   the State court against the alleged sham defendant." *Good v. Prudential Ins. Co. of*
9   *Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).  When testing the applicability of
10  federal diversity jurisdiction, the Court is not limited to the four corners of the
11  pleadings. *W. Am. Corp. v. Vaughan-Bassett Furniture Co., Inc.*, 765 F.2d 932, 936
12  (9th Cir. 1985); *Charlin v. Allstate Ins. Co.*, 19 F. Supp. 2d 1137, 1140 (C. D. Cal.
13  1998).

14          **Plaintiff cannot state any Claim against ReconTrust.**

15      8.      ReconTrust is insulated from any claims alleged in Plaintiff's
16  Complaint.  Generally speaking, even if Plaintiff had alleged specific misconduct
17  against ReconTrust (which he did not), Plaintiff misunderstands ReconTrust's duty
18  as trustee under the deed of trust.  "[T]he trustee's *only* obligations are: (1) upon
19  default to undertake the steps necessary to foreclose the deed of trust; or (2) upon
20  satisfaction of the secured debt to reconvey the deed of trust." *Lopez v. JP Morgan*
21  *Chase Bank, N.A.*, 2012 U.S. Dist. LEXIS 100510, at *17-18 (E.D. Cal. 2012)
22  (quoting *Heritage Oaks Partners v. First Am. Title Ins. Co.*, 155 Cal. App. 4th 339,
23  345 (2007)) (emphasis added).  ReconTrust has no role in determining whether
24  Plaintiff is in default, whether any default has been cured, or whether any other
25  statutory requirements have been followed by the lender (or servicer).  The
26  ***beneficiary*** under the deed of trust, whether BANA or BNYM, makes those
27  determinations, and directs the trustee to commence or suspend foreclosure
28

proceedings accordingly.  *See, e.g.,* Cal. Civ. Code §§ 2924c(a)(2), 2924c(b)(1), 2923.5(a)(2), 2923.5(d).

9.    Furthermore, a trustee under a deed of trust may record a "notice of default or otherwise commence the foreclosure process [only] when acting within the scope of authority designated by the holder of the beneficial interest."  Cal. Civ. Code § 2924(a)(6).  Here, the holder of the beneficial interest under the deed of trust was either BANA or BNYM, which authorized ReconTrust to record any foreclosure documents.  All pre-recording requirements inure **only** to the beneficiary, who then informs the trustee after taking those actions.

10.    Even if either servicer had given incorrect information to ReconTrust, as trustee, ReconTrust enjoys immunity to the extent in relied in good faith on information furnished by the loan servicer.  As stated in *Nicosia v. Wells Fargo Bank,* 2010 U.S. Dist. LEXIS 115403 (N.D. Cal. 2010):

> Loanstar [the trustee] is… entitled to immunity pursuant to Cal. Civil Code § 2924, which deals with transfers and sales of deeds of trust, and expressly provides that "the trustee shall incur **no liability** for good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage."  *See* Cal. Civil Code § 2924(b).  To the extent Loanstar's conduct occurred in reliance on the lender's information as provided under California statutes and § 2924, Loanstar is immune, in the absence of allegations establishing bad faith – which have not been stated here.  Accordingly, plaintiffs'… claim against Loanstar is dismissed **with prejudice.**

*Id.,* at *2-3 (emphases added).

11.    Here, as in *Nicosia,* ReconTrust cannot be liable as alleged in Plaintiff's Complaint.  Notwithstanding the fact that Plaintiff fails to allege any substantive claims against ReconTrust within his causes of action, ReconTrust's only duty in this case was to take steps to initiate foreclosure proceedings, and it did

1  so pursuant to specific instructions by the beneficiary and/or servicer of Plaintiff's

2  mortgage.

3      **E.**    **The Citizenship of the Doe Defendants is Disregarded for Purposes**

4            **of the Diversity Analysis.**

5      12.    The remaining defendants are named as "Doe" defendants, and as such,

6  are disregarded in determining the existence of diversity.  28 U.S.C. § 1441(a) ("For

7  purposes of removal under this chapter, the citizenship of defendants sued under

8  fictitious names shall be disregarded.").

9      13.    Currently, there are no other named parties to this action.

10  Consequently, complete diversity is established by virtue of the preceding

11  paragraphs.

12      14.    Venue lies in the United states District Court for the Central District of

13  California, pursuant to 28 U.S.C. § 1391(b) and 1441(a), because the State Court

14  Action was filed in this District and this is the judicial district in which the action

15  arose.

16                                   **AMOUNT IN CONTROVERSY**

17      15.    Generally, "[t]he amount in controversy is determined from the

18  allegations or prayer of the complaint."  Schwarzer et al., *Fed. Civ. Proc. Before*

19  *Trial*, ¶ 2:450 (2009) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S.

20  283, 289 (1938) (holding that an inability to recover an amount adequate to give the

21  court jurisdiction does not oust the court of jurisdiction).

22      16.    Here, Plaintiff seeks $50,000.00 in damages for the purported violation

23  of Section 2924.10 of the California Civil Code, and $50,000.00 for the purported

24  violation of Section 2923.6 of the California Civil Code. Ex. A, at Prayer, ¶ 6.

25  Plaintiff also seeks $150,000.00 in restitution, for a total of $250,000. *Id.*

26      17.    Accordingly, the jurisdictional amount needed to establish diversity

27  jurisdiction has been met, and this Court has original jurisdiction pursuant to 28

28

1 | U.S.C. § 1332.  Therefore, this action may be removed to this Court under 28 U.S.C.

2 | §§ 1441 and 1446.

3 | **THIS NOTICE OF REMOVAL IS TIMELY AND PROPER**.

4 |       18.    This notice of removal is timely, pursuant to 28 U.S.C. § 1446(b).

5 | BANA was personally served with the summons and complaint on December 3,

6 | 2014.  BANA has not appeared in the State Court Action, and its time to respond to

7 | the Complaint has not expired.

8 |       19.    Counsel for BANA also represents BNYM and ReconTrust, and

9 | consents to the removal on behalf of all Defendants.  *See Proctor v. Vishay*

10 | *Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) (requirement that

11 | codefendants "join" in removal is met when one defendant avers that all defendants

12 | have consented to removal).

13 |       20.    Pursuant to 28 U.S.C. § 1446(a), BANA files this Notice in the District

14 | Court of the United States for the district and division within which the State Court

15 | Action is pending.

16 |       21.    Pursuant to 28 U.S.C. § 1446(d), a copy of this notice will promptly be

17 | served on Plaintiffs in the State Court Action, and notice thereof will be filed with

18 | the Clerk of the Orange County Superior Court.

19 |     WHEREFORE, Bank of America, N.A. hereby removes Orange County

20 | Superior Court Case No. 30-2014-00759017-CU-OR-CJC to the United States

21 | District Court for the Central District of California, Southern Division.

22 | ///

23 | ///

24 | ///

25 |

26 |

27 |

28 |

1 | DATED: January 2, 2015

Respectfully Submitted,

MCGUIREWOODS LLP


By:    */s/ Adam F. Summerfield*
Adam F. Summerfield
Attorneys for Defendants
Bank of America, N.A.; The Bank of New
York Mellon FKA The Bank of New
York, as Trustee for the Certificateholders
of CWALT, Inc., Alternative Loan Trust
2005-58, Mortgage Pass-Through
Certificates, Series 2005-58; and
ReconTrust Company, N.A.

NOTICE OF REMOVAL

# EXHIBIT  A

1   John E. Mortimer, Esq. (SBN: 130526)
2   LAW OFFICE OF JOHN E. MORTIMER
    43980 Mahlon Vail Circle, Suite 806
3   Temecula, California 92592
    Tel. (951) 297-1504
4   Email: johnemortimer@gmail.com

5   Attorney for Plaintiff,
6   EMILIO VASQUEZ

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**12/01/2014** at 12:31:29 PM

Clerk of the Superior Court
By Davon Velasquez, Deputy Clerk

7           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8        **FOR THE COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

9

10   EMILIO VASQUEZ,

11           Plaintiff,

12   vs.

13
14   BANK OF AMERICA, N.A.; THE BANK
     OF NEW YORK MELLON FKA THE
15   BANK OF NEW YORK, AS TRUSTEE
     FOR THE CERTIFICATEHOLDERS OF
16   CWALT, INC., ALTERNATIVE LOAN
     TRUST 2005-58, MORTGAGE PASS-
17   THROUGH CERTIFICATES, SERIES
     2005-58; RECONTRUST COMPANY,
18   N.A.; AND DOES 1 TO 10, inclusive,

19
           Defendants.
20

21

22

23

24

25

26

27

28

30-2014-00759017-CU-OR-CJC

**CASE NUMBER:**   Judge David T. McEachen

**VERIFIED COMPLAINT FOR DAMAGES**

1.  CANCELLATION OF INSTRUMENTS
    RECORDED IN VIOLATION OF CA
    CIVIL CODE §3412;
2.  QUIET TITLE;
3.  VIOLATION OF CA CIVIL CODE
    §2924.10;
4.  VIOLATION OF CA CIVIL CODE
    §2923.6;
5.  NEGLIGENCE;
6.  NEGLIGENT MISREPRESENTATION;
7.  BREACH OF DUTY OF IMPLIED GOOD
    FAITH AND FAIR DEALING;
8.  VIOLATIONS OF B&P CODE § 17200.

**PLAINTIFF DEMANDS JURY TRIAL**

        Plaintiff, EMILIO VASQUEZ, ("Plaintiff") by and through his attorney, hereby submits his

verified Complaint against Defendants, BANK OF AMERICA, N.A.; THE BANK OF NEW YORK

MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS

OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 2005-58; RECONTRUST COMPANY, N.A.; AND DOES 1 TO 10, inclusive.

## PARTIES

1.     Plaintiff, EMILIO VASQUEZ ("Plaintiff" or "borrower") is, and at all relevant times mentioned herein was a resident of Orange County, California, residing at:  **16702 Mount Baxter Circle, Fountain Valley, California 92708** ("subject property"), legally described as:

```
LOT31 OF TRACT NO.7013, IN THE CITY OF FOUNTAIN VALLEY,
COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED
IN BOOK 262 PAGE(S) 20 AND 21 OF MISCELLANEOUS MAPS, IN
THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, EXCEPT
THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN ALL OIL, GAS,
MINERALS, OTHER HYDROCARBON SUBSTANCES AND UNDERGROUND
WATER LYING BELOW A DEPTH OF 500 FEET, BUT WITH NO RIGHT
OF SURFACE ENTRY, AS PROVIDED IN DEED RECORDED IN BOOK
9414 PAGE, OFFICIAL RECORDS.
```

2.     Plaintiff is informed and believes and thereon alleges, that at all times mentioned herein, BANK OF AMERICA, N.A. (hereinafter "BANA") is a diversified financial marketing and /or services corporation engaged primarily in residential mortgage banking, loan servicing, and /or related businesses and is a subsidiary of its parent company, Defendant BANA has represented to Plaintiff that it has the right to service Plaintiff's loan. BANA is a successor by merger to BAC Home Loans Servicing LP formerly known as Countrywide Home Loans Servicing, LP. BANA conducts, and at all times mentioned herein conducted, business in Orange County, California. BANA serviced the relevant loan. BANA's agent for service of process is C T Corporation System located at: 818 W. Seventh Street, Orange, CA 90017.

3.     Defendant THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, ("BNYM"), is a multi-national banking and financial services corporation with its principal place of business at One Wall Street, New York, New York. BNYM conducts, and at all times

2

mentioned herein conducted, business in Orange County, California. BNYM is the Trustee for Trust, a Real Estate Mortgage Investment Conduit ("REMIC"); that is, and a special purpose vehicle through which the relevant promissory note has been securitized. BNYM's agent for service of process is C T Corporation System located at: 818 W. Seventh Street, Orange, CA 90017. BNYM maintains that it owns the Plaintiff's interest in the subject property.

    4.    Defendant, RECONTRUST COMPANY provides financial services for mortgage industry in the United States. It offers default services, including foreclosure, bankruptcy, eviction, loss mitigation, and REO, as well as document custody and lien release services to loan originators, servicers, and mortgage companies. The company is located at: 1800 Tapo Canyon Road, Simi Valley, California 93063. ReconTrust Company, N.A. operates as a subsidiary of Bank of America, National Association. RECONTRUST conducts, and at all times mentioned herein conducted, business in Los Angeles County, California. RECONTRUST is the putative Trustee and acting as agent for BANA.

    5.    Plaintiff is ignorant of the true names and capacities of Defendants, DOES 1 – 10, inclusive ("DOES"), and therefore sue them by fictitious names. Plaintiff will amend this complaint to allege DOES' true names and capacities when they are ascertained.

    6.    Plaintiff is informed and believes and upon this basis alleges that DOES claim some right, title, estate, lien, or interest in the subject property, adverse to Plaintiff's own title. Each of these claims constitutes a cloud on Plaintiff's title to the subject property from which Plaintiff seeks relief.

    7.    Plaintiff is informed and believes and upon this basis alleges that DOES are contractually, strictly, negligently, intentionally, or vicariously liable, and/or otherwise legally responsible in some manner for each and every act, omission, obligation, event, or happening set forth in this complaint, and that DOES are indebted to Plaintiff as hereinafter alleged.

## JURISDICTION AND VENUE

3

8.      Jurisdiction of this Court arises under *California Code of Civil Procedure §410.10 et seq.* The California Superior Court has jurisdiction over this action pursuant to *California Constitution Article VI §10*, which grants the Superior Court "original jurisdiction in all causes except those given by statute to other trial courts." No other basis of jurisdiction is implied in this case, which presents California state law claims regarding California real estate transactions conducted by California based entity.

9.      Venue is proper in this Court because Defendants are citizens of California. Its principal place of business and main office is located in California. In addition, Defendants' liability to Plaintiff arose within the jurisdictional region of this Court. This Court has jurisdiction over the parties. Plaintiff is a resident of Orange County, California.  All Defendants regularly engage in business within Orange County, California.

10.     Defendants herein purposefully directed their activities to the State of California and consummated a transaction with residents of the State of California, such as Plaintiff herein. As a result, Defendants caused an event or events to occur in California, and more particularly in the County of Orange, out of which this action arises and which forms the basis of this action.

11.     The residential mortgage concerned the property located at: **16702 Mount Baxter Circle, Fountain Valley, California 92708.**

## GENERAL AND FACTUAL ALLEGATIONS

12.     On September 22, 2005, Plaintiff purchased his home in the amount of $900,000. Plaintiff executed a Note secured by a Deed of Trust and the subject property with First Guaranty Financial Corporation ("FGFC") in the amount of $675,000.00. The original trustee under the Deed of Trust was ALLIANCE TITLE. **(Exhibit A – DOT)**

13.     Plaintiff recalls placing at least $150,000 down payment at the close of escrow.

14.     Plaintiff's loan was a first lien in the title and the subject property was owner-occupied, single-family detached dwelling.

15.     In late 2010, Plaintiff suffered financial hardship due to the recession and the increasing adjustable interest rate.

16.     Defendant BANA advertises through borrower's monthly statement that loan modification is available to him and that it is specifically able to discuss with applicant(s) loss mitigation assistance if borrower(s) were experiencing financial difficulty.  This is an offer to Plaintiff to apply for a loan modification.

17.     Plaintiff sought the assistance of a third party non-profit organization assisting homeowners with requesting loan modification and submission.

18.     On or about November 4, 2011, a Notice of Default was recorded by ReconTrust Company for BAC Home Loans Servicing, LP. **(Exhibit B – NOD)**

19.     On the same date, November 4, 2011, (6) six years later after the Trust closed in December 22, 2005, an assignment of the Deed of Trust was recorded in favor of: THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-58, a ("Trust"), which is a Real Estate Mortgage Investment Conduit ("REMIC"), a special purpose vehicle (SPV) through which the relevant promissory note has putatively been securitized. **(Exhibit C - Assignment)**

20.     The assignment itself does nothing to resolve the contention that Plaintiff's loan was sold and the original lender had no continuing interest in the loan or DOT after 2005. Moreover, the

Assignment of the DOT is not substantiated, and in fact the signature of Loryn Stone (alleged Assistant Secretary for MERS) is a FORGERY.

21.　　Plaintiff alleges this document does not provide any legal notice. It will be subject to further discovery because Loryn Stone is a robo-signer and Plaintiff alleges the default notice has no lawful authority as it would be considered a "material violation" under California's HBOR. *Robo-Signing Eradicated: The Act seeks to do away with a prior lender bureaucratic necessity called "rob-signing". The Act that any declaration, notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded in a foreclosure on behalf of a mortgage servicer, or a declaration filed in court relating to a foreclosure, must be accurate and complete and supported by reliable evidence.*

22.　　In addition, before filing or recording of any of these documents, the mortgage servicer shall have reviewed competent and reliable evidence that substantiates the borrower's default and the mortgage servicer's right to foreclose. Civil Code §2924.17(b).

23.　　Plaintiff alleges legally insufficient Instruments have been filed by Defendants and that the legal sufficiency of every recorded Instrument in the subject property's chain of title is hereby challenged subject to this court's jurisdiction.

24.　　On or about February 10, 2012, ReconTrust recorded a Notice of Trustee Sale against the Subject Property while his loan modification was under review. **(Exhibit D – NTS)**

25.　　On or about February 11, 2013, Plaintiff's home was sold at a public auction for $668,000. **THIS IS A CLEAR VIOLATION OF CA CIVIL CODE §2923.6. (Exhibit E – TDS)**

26.　　On February 21, 2013, a Trustee's Deed Upon Sale was recorded in favor of a RJ Comm Properties Inc.

27.     Civil Code §2924.12 authorizes action to enjoin foreclosures, or for damages after foreclosure, for breaches of § § 2923.55 or 2924.17. This right of private action is "in addition to and independent of any other rights, remedies, or procedures under any other law.  Nothing in this section shall be construed to alter, limit or negate any other rights, remedies or procedures provided by law." Civil Code § 2924.12 & 2924.17(a)(b).

28.     Plaintiff alleges Defendants violated the aforementioned statute.

## FIRST CAUSE OF ACTION

## CANCELLATION OF RECORDED INSTRUMENTS IN VIOLATION OF CA CIV. CODE §3412

29.     Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

30.     On or about February 10, 2012, ReconTrust executed a Notice of Trustee's Sale. Such Notice of Trustee's Sale was recorded in the Official Records, County of Orange.  The notice was signed by Rosselin Rincon, Assistant Vice President for ReconTrust Company, N.A.

31.     Plaintiff believes and upon such belief contends that the Notice of Trustee's Sale contains a forged signature of the signatory, Rosselin Rincon. The Notice of Trustee's Sale was based on the Notice of Default recorded on November 4, 2011 pursuant to the Assignment recorded on the same day, November 4, 2011.

32.     Plaintiff alleges and believes and upon such belief contends that the 2011 Assignment of DOT contains the forged signature of Loryn Stone.

33.     Plaintiff alleges and believes and upon such belief contends that due to the fraudulent forgeries, the 2011 Assignment of Deed of Trust and 2012 Notice of Trustee's Sale were void.

34.     Plaintiff alleges and believes and upon such belief contends that there cannot be a valid transfer of interest in the subject real property to BNYM based upon the fraudulent, void 2011 Assignment of DOT and or the fraudulent, void 2012 Notice of Trustee's Sale.

35.     Plaintiff therefore seeks cancellation of the following recorded instruments: (a) Notice of Default (b) Notice of Trustee's Sale, document (c) Assignment of Deed of Trust and (c) Trustee's Deed Upon Sale, since all deeds, notices and assignments are void as based on invalid instruments.

36.     Further, Plaintiff alleges tender is not required in this instance, as imposing the tender requirement on Plaintiff would be inequitable. Specifically, Plaintiff was induced into entering into a loan which was predatory in nature and was not fully disclosed. During said inducement, Plaintiff put down at least $150,000 at the close of escrow. He then made payments until the loan payments became unaffordable because of the increasing interest rate.

37.     Plaintiff alleges he was not only induced into entering a predatory loan contract, he also lost $150,000 and lost his home where he made payments to this obligation.

38.     By virtue of Defendants' willful and wrongful conduct as herein alleged above, Plaintiff is entitled to general and special damages according to proof at trial.

## SECOND CAUSE OF ACTION
### QUIET TITLE

39.     Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

40.     Plaintiff is and at all times mentioned herein was legal owner and entitled to possession of the property commonly known as APN: 144-471-31, located at **16702 Mount Baxter Circle, Fountain Valley, CA 92708**, and legally described as:

    LOT 31 OF TRACT NO.7013, IN THE CITY OF FOUNTAIN VALLEY, COUNTY
    OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 262

PAGE(S) 20 AND 21 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, EXCEPT THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN ALL OIL, GAS, MINERALS, OTHER HYDROCARBON SUBSTANCES AND UNDERGROUND WATER LYING BELOW A DEPTH OF 500 FEET; BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN DEED RECORDED IN BOOK 9414 PAGE, OFFICIAL RECORDS.

41.     Plaintiff seeks to quiet title as of February 11, 2013. Plaintiff believes and upon such belief contends that the Trustee's Sale conducted on or about February 11, 2013 was void pursuant to the use of fraudulent signatures of Loryn Stone, Assistant Secretary to MERS wherein MERS and or Loryn Stone had no legal right to assign the DOT to BNYM.

42.     Plaintiff seeks judicial declaration that the title to the subject property is vested in Plaintiff alone and that Defendants and each of them be declared to have no interest estate, right, title or interest in the subject property and that Defendants, agents and assigns, be forever enjoined from asserting any estate, right title or interest in the subject property.

43.     Plaintiff is informed and upon this belief alleges that Defendants and each of them, failed to acquire any legal ownership or interest in the subject property on the date of the Trustee's Sale, as the Trustee's Sale was initiated through fraud by a forgery of title instruments which were recorded with the Orange County Recorder's office.  Recorded documents, Assignment of DOT, NOD and Notice of Trustee's Sale   were utilized in facilitating the Trustee's Sale of the subject property. Plaintiff further alleges that Defendants, and each of them, allegedly obtained the subject property through fraud and wrongful conduct and failed to adhere to the strict statutory requirements to effectuate the foreclosure sale of the subject property.  Thus, the foreclosure sale was void and invalid.

44.     Tender is not required in this instance, as imposing the tender requirement on Plaintiff would be inequitable.

9

45.     Plaintiff alleges the foreclosure sale was invalid and the deed was void on its face for the aforementioned reasons. No tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face. *Dimock v. Emerald Properties, LLC,* 81 Cal.App.4th 687. This case is one where the trustee's deed is void on its face, thereby nullifying the general tender requirement.

46.     Accordingly, the Court should rule that the subject property remains Plaintiff's property and award consequential damages as proven at trial.

### THIRD CAUSE OF ACTION

### VIOLATIONS OF CA CIV. CODE §2924.10 ($50,000)

47.     Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

48.     California Civ. Code § 2924.10 provides,  *"(a) When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt...*(emphasis added).

49.     As discussed above, Plaintiff responded to Defendants' offer for a loan modification review because he was experiencing financial hardship and he has relied on Defendants' promise that they would be able to review his Request for Modification Application in a timely manner in order to lower his monthly payment to avoid foreclosure.

50.     Plaintiff alleges Defendants' representative stated that once they received his complete loan modification application they would assign a SPOC as required by California statute and will process and review his application in a timely manner.

---

10

51.     On several occasions, Plaintiff contacted Defendants to get an update and status of his application. Various Defendants' representative, not a SPOC or team of SPOC gave Plaintiff the run-around.

52.     Plaintiff has been harmed by Defendant's violation California Civ. Code § 2924.10 because Plaintiff has incurred foreclosure fees, arrears, late fees and legal fees to protect his property against potential foreclosure. But for Defendants' untimely review, and inefficient processing, Plaintiff's loan would have been modified to where he can afford the monthly payments and avoid arrears, late fees, foreclosure fees and legal fees.

53.     As a direct and proximate result of Defendant's intentional and reckless violation of the statute, Plaintiff has been harmed in that (1) he spent numerous hours and resources with providing documents to BANA; (2) Plaintiff has suffered derogatory ratings by the credit agencies which have made it difficult for him to establish credit worthiness. (3) Plaintiff loss his large amount of down payment ($150,000); (4) lost his equity to the property due to the predatory loan; (5) lost his home;  (6) he incurred foreclosure fees and legal fees.

54.     Plaintiff also demands statutory or actual damages which have resulted from Defendants' violation of the statute.

### FOURTH CAUSE OF ACTION

### VIOLATION OF CA CIV. CODE §2923.6 ($50,000)

55.     Plaintiff re-alleges and incorporates herein by reference the allegations made in paragraphs above inclusive, as though fully set forth herein.

56.     Pursuant to Civil Code §2924.15, Civil Code §2923.6 *applies only to mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than*

*four (4) dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower as indicated in loan documents. Here, the property contains no more than four (4) dwelling units, and the property is Plaintiff's principal residence, indicated in the loan documents.* Therefore, Plaintiff may bring this action for possession under CA Civ. Code §2923.6.

57.    California Civil Code §2923.6(c) states that once a borrower submits an application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage servicer, the servicer shall not record a Notice of Default or Notice of Sale, or conduct a Trustee's Sale, while the application is pending and until any of the following occurs:

    a.    The mortgage servicer makes a written determination that the borrower is not eligible for a foreclosure prevention alternative and any appeal period has expired;
    b.    The borrower does not accept an offered foreclosure prevention alternative within fourteen (14) days at the offer; or
    c.    The borrower accepts a written foreclosure prevention alternative, but defaults on the loan modification or otherwise breaches his/her obligations under the foreclosure prevention alternative.

58.    In this case, Plaintiff was actively in the loan modification review process with Defendant BANA and Plaintiff was consistently assured that their file was "in review" and that no foreclosure activity would initiate, as long as Plaintiff was in review for loss mitigation.

59.    Moreover, the law prohibits **"dual tracking"** – a mortgage servicer, mortgagee, trustee, beneficiary or authorized agent may not record a Notice of Trustee's Sale or may not conduct a non-judicial foreclosure sale while a "complete" first lien loan modification application is pending. Therefore, Defendants may **NOT** conduct a Trustee's Sale.

60.    On or about <u>February 11, 2013, Plaintiff's home was sold at a public auction for $668,000.</u> **THIS IS A CLEAR VIOLATION OF CA CIVIL CODE §2923.6.**

61.     Plaintiff alleges Defendants' failure to comply with CA Civil Code §2923.6 directly undermine the intent of the statute. The failure to adhere to the statute renders it essentially meaningless and, if the statute is not enforced, it will serve to perpetuate a cycle that results in far too many homeowners being rendered homeless. As a result, Defendants are liable to Plaintiff for any and all statutory and or actual damages which have resulted from their conduct.

62.     As a direct and proximate result of Defendant's intentional and reckless violation of the statute, Plaintiff has been harmed in that (1) spending numerous hours and resources with providing documents to BANA; (2) Plaintiff has suffered derogatory ratings by the credit agencies which have made it difficult for him to establish credit worthiness. (3) Plaintiff could no longer refinance his property to get a better interest rate and better loan terms; (4) incurred late penalties.

63.     In addition, Plaintiff has incurred costs associated with the foreclosure action in the amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### NEGLIGENCE

64.     Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

65.     To state a claim for negligence, first, a plaintiff must establish that defendant owed them a duty of care. Generally, banks owe no duty to borrowers within a typical lender-borrower relationship. Many courts use the *Biankaja* test to determine whether a duty of care existed between a financial institution and borrower.

66.     Typically, a financial institution owes no duty of care to a borrower. Yet it may where its activities either exceed those of a conventional lender or according to a review of six non-exhaustive factors. These factors are: 1) the extent to which the transaction was intended to affect the Plaintiff; 2)

13

the foreseeability of harm to him/them; 3) the degree of certainty that the Plaintiff suffered injury; 4) the closeness of the connection between the defendant's conduct and the injury suffered; 5) the moral blame attached to the defendant's conduct; and 6) the policy of preventing future harm.

67.   Plaintiff alleges BANA is not the originator of his loan, because FGFC sold his loan which was securitized wherein BANA who acted as beneficiary and "loan servicer" and agreed to consider borrower's loan modification application.

68.   Here, because BANA accepted to review Plaintiff's loan modification application, BANA acted beyond a typical lender. BANA owed Plaintiff a duty of care in careful and timely review of borrower's loan modification application.

69.   Plaintiff alleges BANA acting as loan servicer failed to review borrowers' application in good faith, in a timely manner, and BANA failed to comply with the California HBOR with establishing a SPOC and assist borrowers to efficiently process their loan modification application. Instead, there were several non-SPOC representatives requesting various documents repeatedly causing chaos, redundancy and providing divergent instructions to borrowers and non-profit agent. In addition, HBOR sets forth policy considerations that contribute to a duty of care. *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 899, 901

70.   Plaintiff alleges BANA, as loan servicer owed Plaintiff a duty of ordinary care; however, they were negligent in processing borrower's loan modification application as discussed above.

71.   Plaintiff alleges Defendant BANA breached its duty of ordinary care and good faith to Plaintiff, their duty not to put Plaintiff in a worse position than when they found him, and then violated the terms of the Consent Order when they:

      a.  Failed to give Plaintiff a fair and timely review for HAMP assistance despite the fact that Plaintiff performed every term required for modification.

      b.  Failed to evaluate Plaintiff for other options pursuant to their promise to do so and according to California law and Homeowners' Bill of Rights.

72.    BANA's breaches are the actual and proximate cause of Plaintiff's damages because, *"but for"* BANA's breaches, Plaintiff would have escaped the following harm in that: (1) borrower spent numerous hours and resources with providing documents to BANA during the process of loan modification; (2) loss of time and money because of BANA's repetitive request for submissions of documents previously submitted; (3) loss of income due borrowers' loss of hours at work in order to facilitate Defendants' repetitive request for unnecessary documents, (4) incurred liens against his property and late penalties; (5) damaged his credit due to prolonged modification process; (6) borrower incurred large amount of arrears due to the prolonged review process and (5) lost his equity and his home through foreclosure.

73.    Plaintiff demands compensatory monetary damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

74.    Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

75.    Plaintiff alleges by information and belief that Defendants misrepresented material information to him when Defendants offered him application to apply for a loan modification. Defendants have full knowledge that their affirmative representations were false and misrepresented the truth at the time said representations were made.

76.     Plaintiff alleges above-mentioned Defendants promised him that if Plaintiff was to submit a complete loan modification package, they would under the law review his application in good faith and in a timely manner pursuant to the California statute.

77.     Plaintiff alleges it has been more than two years that he had relied on the Defendants' promise of a good faith review. That upon this reliance he began submitting a loan modification application to BANA, and each time he called for update on his application, BANA have excuses.

78.     Plaintiff alleges Defendants represented to Plaintiff per his conversation with their agents that they would review his application in a timely manner so that Plaintiff may avoid default of his loan, incur late fees and potential loss of his property. In 2013 when HBOR was enacted in California, Defendant BANA was supposed to give him notice of a denial and or time to appeal if his loan was improperly denied. None of this ever happened.

79.     In addition, Plaintiff alleges Defendant BANA has knowingly recorded Notice of Trustee's Sale without a determination of his application for loan modification. Despite his reliance for many months and repeated submissions of financial documents month after month and while Defendant BANA has represented to him that they would provide him a determination first before they can proceed with foreclosure, BANA foreclosed his home on February 11, 2013.

80.     Plaintiff alleges BANA knowingly violated the statute under §2923.6 - dual tracking under HBOR.

81.     Plaintiff reasonably relied on Defendants' misrepresentation, waiting months for his application to be processed, but in the end, Defendants' intention was to dual-tracked Plaintiff and foreclosed his property.

82.     Defendant BANA intended for Plaintiff to rely on their misrepresentation. Defendants prolonged the review of Plaintiff's loan modification, wherein Plaintiff incurred late penalties, increased arrears, legal costs to protect his interest to his property, and damage to his credit.

83.     Under the circumstances, the Defendants' neglect and misrepresentation were malicious and oppressive.

84.     As a direct and proximate cause of Defendants' misrepresentations, Plaintiff has suffered damages as discussed above.

85.     Plaintiff demands damages according to proof at trial.

## SEVENTH CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

86.     Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

87.     Plaintiff alleges Defendants breached the implied covenant of good faith and fair dealing implicit within it. This covenant encompasses any promises which a reasonable person in Plaintiff's position would justifiably understand was included within the loan contract.

88.     As described in detail above, Defendants breached the implied good faith and fair dealing when Defendants:

a.   Violated several California Statutory laws (50,000 each occurrence);

b.   Made material misrepresentations to Plaintiff as discussed above;

c.   RECONTRUST AND BANA knowingly and fraudulently executed and recorded false instruments with the county public records with full knowledge that, in fact, those documents were false when executed and subsequently filed.

17

89.     Plaintiff has also lost equity to the property, damaged his credit, loss of future equity to the subject property. Thus, Defendants dealt unfairly and in bad faith with Plaintiff.

90.     As a direct and proximate result of Defendant's intentional and reckless violation of the statute, Plaintiff has been harmed in that (1) the recording created a cloud on the property. (2) Plaintiff has suffered derogatory ratings by the credit agencies which have made it difficult for him to establish credit worthiness. (3) Plaintiff could no longer refinance his property to get a better interest rate and better loan terms; and (4) he incurred foreclosure fees and (5) lost his home through unlawful foreclosure.

91.     Plaintiff demands an award of damages in recompense. The amount of these damages shall be determined according to proof at trial.

### EIGHTH CAUSE OF ACTION

### VIOLATION OF CA B&P CODE § 17200

92.     Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

93.     Plaintiff alleges Defendants violated Bus. & Prof. Code § 17200, *et seq.*

94.     California Business and Professions Code section 17200, *et seq.* prohibits unlawful, unfair, or fraudulent business practices.

95.     As described in detail above, Defendants engaged in the following deceptive business practices by:

    d.   Misrepresentations to Plaintiff as discussed above.

    e.   Violation of California statutory laws such as the HBOR;

    f.   Knowingly and fraudulently executed and recorded false instruments with the county public records with full knowledge that, in fact, those documents were false when executed and subsequently filed. (See Exhibit C)

96.   Plaintiff alleges Defendants have violated the public trust by filing instruments with such knowledge. Defendants are subject to sanctions and fines for filing these instruments in this Court and in the public.  Defendants have willfully and intentionally deceived this court and the public by its actions and conduct.

97.   These acts and more are unlawful and unfair conducts have caused substantial harm to Plaintiff and the California citizenry at large.

98.   As a direct and proximate result of Defendant's intentional and reckless violation of the statute, Plaintiff has been harmed in that (1) the recording created a cloud on the property. (2) Plaintiff has suffered derogatory ratings by the credit agencies which have made it difficult for him to establish credit worthiness. (3) Plaintiff could no longer refinance his property to get a better interest rate and better loan terms; and (4) incurred late charges.

99.   Under CA B&P Code §17203, *"Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure,*

EMILIO VASQUEZ v. BANA. – VERIFIED COMPLAINT FOR DAMAGES

*but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state."*

100.    Plaintiff also requests the Court to use its equitable power pursuant to B&P Code §17203 to issue an Order to Defendants BANA and BNYM to rescind all default notices, levied against Plaintiff's account and make all reasonable efforts to restore Plaintiff's credit to its previous standing.

101.    Plaintiff demands Defendants disgorge their illicit profits and that he receives all monetary awards statutorily due him.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    That judgment is entered in Plaintiff's favor and against Defendants, and each of them;

2.    For issuance of an order cancelling the Notice of Default, Assignment of Deed of Trust, Notice of Trustee's Sale and Trustee's Deed Upon Sale.

3.    To vacate the Trustee's Deed Upon Sale.

4.    To quiet title in favor of Plaintiff and against Defendants.

5.    For compensatory, special and general damages in an amount to proof at trial.

6.    For civil penalties ($50,000 each occurrence) pursuant to statute and restitution (150,000 down payment).

7.    That the Court holds Defendants liable for various violations of statutes stated above.

8.    That the Court holds Defendants liable for interest on the foregoing damages from September 22, 2005, in the maximum amount allowed by law.

9.    That the Court awards Plaintiff reasonable attorney's fees, reasonable costs of suit incurred, and any other relief as it may deem just and proper.

1    DATED:  November 10, 2014          LAW OFFICE OF JOHN E. MORTIMER

2

3

4    BY:      _____
           JOHN E. MORTIMER, ESQ
5          Attorney for Plaintiff,
           EMILIO VASQUEZ
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EMILIO VASQUEZ v. BANA. – VERIFIED COMPLAINT FOR DAMAGES

# EXHIBIT "A"

**RECORDING REQUESTED BY:**
**ALLIANCE TITLE COMPANY**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||   69.00

**2005000768561 03:58pm 09/28/05**

108 73 D11 22

0.00 0.00 0.00 0.00 63.00 0.00 0.00 0.00

Recording Requested By:
FIRST GUARANTY FINANCIAL CORPORATION

And After Recording Return To:
FIRST GUARANTY FINANCIAL CORPORATION
3 HUTTON CENTRE, STE#150
SANTA ANA, CALIFORNIA 92707
Loan Number: 00527926

--------------------------- [Space Above This Line For Recording Data] ---------------------------

# DEED OF TRUST

MIN: 1000157-0005807831-8

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  SEPTEMBER 22, 2005      , together with all Riders to this document.
(B) "Borrower" is EMILIO VASQUEZ, A SINGLE MAN

Borrower is the trustor under this Security Instrument.
(C) "Lender" is FIRST GUARANTY FINANCIAL CORPORATION

Lender is a CALIFORNIA CORPORATION                                                      organized
and existing under the laws of  CALIFORNIA
Lender's address is 3 HUTTON CENTRE, STE#150, SANTA ANA, CALIFORNIA 92707

(D) "Trustee" is ALLIANCE TITLE
25 B TECHNOLOGY #100, IRVINE, CALIFORNIA 92618

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated SEPTEMBER 22, 2005
The Note states that Borrower owes Lender SIX HUNDRED SEVENTY-FIVE THOUSAND AND
00/100                              Dollars (U.S. $ 675,000.00          ) plus interest.

Borrower Initials: E V

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 1 of 14

DocMagic ℰℱⓡⓜⓢ 800-649-1362
www.docmagic.com

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than OCTOBER 1, 2035.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ Other(s) [specify]
☐ 1-4 Family Rider    ☐ Biweekly Payment Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY of              ORANGE

[Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]

Borrower Initials: _E V_ _____    _____    _____    _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS                DocMagic ☎800-649-1362
Form 3005 01/01                          Page 2 of 14                                www.docmagic.com

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: 144-471-31

*See Exhibit A*

which currently has the address of  16702 MOUNT BAXTER CIRCLE
[Street]

FOUNTAIN VALLEY                      , California  92708        ("Property Address"):
[City]                                               [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

Borrower Initials: E V

Page No. 9
File No. 15090279-123

**Exhibit A**
**LEGAL DESCRIPTION**

All that certain real property in the County of ORANGE, State of California, described as follows:

LOT 31 OF TRACT NO. 7013, IN THE CITY OF FOUNTAIN VALLEY, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 262 PAGE(S) 20 AND 21, OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN ALL OIL, GAS, MINERALS, OTHER HYDROCARBON SUBSTANCES AND UNDERGROUND WATER LYING BELOW A DEPTH OF 500 FEET, BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN DEED RECORDED IN BOOK 9414 PAGE 200, OFFICIAL RECORDS.

APN No:  144-471-31

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   Application of Payments or Proceeds.   Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   Funds for Escrow Items.   Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

Borrower Initials: EY

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Borrower Initials: _E V_

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Borrower Initials: _E V_ _____ _____ _____ _____ _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01      Page 6 of 14      *DocMagic* 800-649-1362
www.docmagic.com

8.  Borrower's Loan Application.  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to:  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These

Borrower Initials: ___E V___   _____   _____   _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                         Page 7 of 14

DocMagic EForms  800-649-1382
www.docmagic.com

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower Initials: _E V_

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

Borrower Initials: _E V_  ___  ___  ___  ___

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

Borrower Initials: _E V_

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                          Page 10 of 14.

*DocMagic* *eRorms* 800-649-1362
www.docmagic.com

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  **Hazardous Substances.**  As used in this Section 21:  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.**  Borrower and Lender further covenant and agree as follows:

22.  **Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The

Borrower Initials:  _EV_   ___   ___   ___   ___

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Borrower Initials: EV

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Emilio Vasquez_ _____ (Seal)
EMILIO VASQUEZ                -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

Witness:                          Witness:

_____          _____

State of California            )
                               ) ss.
County of  ORANGE              )

On  9/23/05            before me,    Anh Ngo

personally appeared  EMILIO VASQUEZ

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

ANH NGO
Commission # 1335270
Notary Public - California
Orange County
My Comm. Expires Dec 17, 2005

NOTARY SEAL

_____
NOTARY SIGNATURE

ANH  NGO.
_____
(Typed Name of Notary)

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 14 of 14          DocMagic eForms 800-649-1362
                                                                          www.docmagic.com

Penalty of Perjury
Government Code: 27361-7

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL TO WHICH THIS DOCUMENT IS ATTACHED READS AS FOLLOWS:**

NAME OF NOTARY: Anh Ngo

COMMISSION NO.: 1335270

MANUFACTURE/VENDOR NO.: NNA1

COUNTY WHERE BOND IS FILED: Orange

DATE COMMISSION EXPIRES: Dec 17, 2005

PLACE OF EXECUTION: Irvine

DATE: 9-28-05

SIGNATURE: Keru Rangel
                              **ALLIANCE TITLE COMPANY**


**GOVERNMENT CODE: 27361-7**

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE ILLEGIBLE PORTION OF THIS DOCUMENT, TO WHICH THIS STATEMENT IS ATTACHED, READS AS FOLLOWS:**


SIGNATURE: _____

DATE: _____

Loan Number: 00527926

Date: SEPTEMBER 22, 2005

Property Address: 16702 MOUNT BAXTER CIRCLE, FOUNTAIN VALLEY,
CALIFORNIA 92708

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : 144-471-31

DocMagic eForms 800-649-1362
www.docmagic.com

MIN: 1000157-0005807831-8                    Loan Number: 00527926
Doc ID#:

## ADJUSTABLE RATE RIDER
### (MTA-Twelve Month Average Index - Payment Caps)

THIS ADJUSTABLE RATE RIDER is made this        22nd        day of  SEPTEMBER
2005            , and is Incorporated into and shall be deemed on amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
FIRST GUARANTY FINANCIAL CORPORATION, A CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and
located at:
    16702 MOUNT BAXTER CIRCLE, FOUNTAIN VALLEY, CALIFORNIA 92708
                        [Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT
THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL
AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agrees as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2.   INTEREST**
    **(A)  Interest Rate**
    Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I
will pay interest at a yearly rate of     1.000 %.  The Interest rate I will pay may change.
    The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section 7(B) of the Note.

    **(B)  Interest Rate Change Dates**
    The interest rate I will pay may change on the        1st        day of NOVEMBER
2005            , and on that day every month thereafter. Each date on which my interest
rate could change is called an "Interest Rate Change Date." The new rate of interest will become
effective on each Interest Rate Change Date. The interest rate may change monthly, but the
monthly payment is recalculated in accordance with Section 3.

Borrower Initials: _E V_   _____   _____   _____   _____   _____

**PayOption MTA ARM Rider**
**FE-5315 (0505)**                        Page 1 of 5

**(C)  Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 200/1000    percentage point(s)  3.200 % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than  9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3.   PAYMENTS**

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the    1st        day of each month beginning on NOVEMBER 1, 2005 .  I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on OCTOBER 1, 2035    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3 HUTTON CENTRE, STE#150, SANTA ANA, CALIFORNIA 92707
or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 2,171.07        unless adjusted under Section 3 (F).

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the   1st
day of NOVEMBER, 2006    , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

Borrower Initials: _____  _____  _____  _____  _____
PayOption MTA ARM Rider
FE-5315 (0505)                                Page 2 of 5

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075.  The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**
Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to ONE  HUNDRED FIFTEEN AND 000/1000 percent ( 115.000 %)of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**
On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

Borrower Initials: _____  _____  _____  _____  _____  _____
PayOption MTA ARM Rider
FE-5315 (0505)                              Page 3 of 5

**(H)  Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

> (i)   Interest Only Payment:  the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
>
> (ii)   Fully Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.
>
> (iii)   15 Year Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

> Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Borrower Initials:  E V
PayOption MTA ARM Rider
FE-5315 (0505)                                      Page 4 of 5

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

*Emilio Vasquez*

_____
EMILIO VASQUEZ                                                    -Borrower

_____
                                                                 -Borrower

_____
                                                                 -Borrower

_____
                                                                 -Borrower

PayOption MTA ARM Rider
FE-5315 (0505)                          Page 5 of 5

EXHIBIT "B"

LANDSAFE TITLE

Recorded In Official Records, Orange County
Tom Daly, Clerk-Recorder

18.00

2011000558682 08:00am 11/04/11
217 408 N15 4
0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

RECORDING REQUESTED BY:
WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Attn: Sheryl Dela Cruz
TS No. 11-0084642
Title Order No. 11-0068004

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is $86,029.56, as of 11/01/2011 and will increase until your account becomes current.

   While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

   Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

TS No. 11-0084642

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-58
C/O Bank of America, N.A.
400 National way
SIMI VALLEY, CA 93065
FORECLOSURE DEPARTMENT (800) 669-6650

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

## YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 09/22/2005, executed by EMILIO VASQUEZ, A SINGLE MAN as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. MIN: 1000157-0005807831-8 as beneficiary recorded 09/28/2005, as Instrument No. 2005000768561 (or Book , Page ) of Official Records in the Office of the County Recorder of Orange County, California.

Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 675,000.00.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of : FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 12/01/2009 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, TOGETHER WITH ALL LATE CHARGES; PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS FEES.

TS No. 11-0084642

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.

Dated: November 01, 2011   NOV 0 2 2011

RECONTRUST COMPANY, N.A., as agent for the Beneficiary

NOV 0 2 2011

Authorized Signer

**WALLY DAVIDSON**
**ASSISTANT VICE PRESIDENT**

*Form nodorlg_2011.3.0_03/2011*

Bank of America
Home Loans

Notice Date:   October 25, 2011

| 11-0084642 |

Emilio Vasquez
18702 Mount Baxter Cir
Fountain Valley, CA  92708

Property Address:
18702 Mount Baxter Circle
Fountain Valley, CA  92708

## CALIFORNIA DECLARATION

I, _Luella Harris_, Mortgage Servicing Specialist I of Bank of America, N.A., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

Bank of America Home Loan

☐ has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure,

☒ tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5, or

☐ verified that the borrower has surrendered the property.

☐ has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

☐ has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

☐ The provisions of California Civil Code §2923.5 do not apply because State Reason.

_10/25/11  Jacksonville  FL_
Date and Place

_Luella  Harris_
Name of Signor

CA-DECLARATIONS  8838/9808  8/27/2008

# EXHIBIT "C"

LANDSAFE TITLE

RECORDING REQUESTED BY:
RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA  93063

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

9.00

2011000556681 08:00am 11/04/11
217 408 A32 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

TS No. 11-0084642

11- 0068004

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2005-58

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 09/22/2005, EXECUTED BY:
EMILIO VASQUEZ, A SINGLE MAN, TRUSTOR: TO ALLIANCE TITLE, TRUSTEE AND RECORDED AS
INSTRUMENT NO. 2005000768561 ON 09/28/2005, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S
OFFICE OF ORANGE COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND
TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID
DEED OF TRUST/MORTGAGE.

DATED: November 01, 2011
NOV 0 2 2011

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
MIN: 1000157-0005807831-8
BY: _____, Assistant Secretary
       Loryn Stone

NOV 0 2 2011

State of:   CALIFORNIA       )
County of:  VENTURA          )

On  NOV 0 2 2011  before me,   Angelica A. Ortiz       , notary public, personally appeared
                   Loryn Stone            , who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

ANGELICA A. ORTIZ
Commission # 1910648
Notary Public - California
Ventura County
My Comm. Expires Oct 28, 2014

Signature _____ (Seal)
          Angelica A. Ortiz

Form asgnmnt (01/09)

# EXHIBIT "D"

LANDSAFE TITLE

RECORDING REQUESTED BY:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

9.00

* $ R 0 0 0 4 5 4 9 0 1 2 $ *

2012000077943 08:00am 02/10/12

37 402 N34 1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
TS No. 11-0084642
Title Order No. 11-0068004

APN No. 144-471-31

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 09/22/2005.
UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE
SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE
NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A
LAWYER.**

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust
executed by EMILIO VASQUEZ, A SINGLE MAN, dated 09/22/2005 and recorded 09/28/2005, as Instrument No.
2005000768561, in Book , Page  of Official Records in the office of the County Recorder of ORANGE County, State of
California, will sell on 03/05/2012 at 03:00 PM, AT THE NORTH FRONT ENTRANCE TO THE COUNTY
COURTHOUSE, 700 CIVIC CENTER DRIVE WEST, SANTA ANA, ORANGE COUNTY, CA
at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and
interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as
more fully described in the above referenced Deed of Trust.  The street address and other common designation, if any, of the
real property described above is purported to be:  16702 MOUNT BAXTER CIRCLE, FOUNTAIN VALLEY, CA  92708.
The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if
any, shown herein.
The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus
reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $859,153.83.
It is possible that at the time of sale the opening bid may be less than the total indebtedness due.
 In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or
federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank
specified in Section 5102 of the Financial Code and authorized to do business in this state.
Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title,
possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as
provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note,
plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.
If required by the provisions of  Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary
or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Phone/Sale Information: (800) 281-8219

By: ~~Rosselin Rincon~~ FEB 0 8 2012
Rosselin Rincon, Asst Vice President
RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt.  Any information obtained will be used for
that purpose.

*Form nos_2011.11.0_11/2011*

# EXHIBIT "E"

RECORDING REQUESTED BY:
RJ COMM PROPERTIES, INC
AND WHEN RECORDED MAIL TO:
**RJ COMM PROPERTIES, INC**
10073 VALLEY VIEW # 275
CYPRESS, CA 90630

**Recorded in Official Records, Orange County**
**Renee Ramirez, Assistant Clerk-Recorder**

|||||||||||| 15.00

2013000108604 3:16 pm 02/21/13
276 416 T09 F13   3 21
367.13 367.12 0.00 6.00 0.00 0.00 0.00

Forward Tax Statements to Address listed above

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No. 11-0084642
Title Order No. 11-0068004

## TRUSTEE'S DEED UPON SALE

APN#      144-471-31          TRANSFER TAX:$    734.25

The Grantee herein  was not the beneficiary
The amount of the unpaid debt was $ 896,910.40
The amount paid by the Grantee was $ 668,000.00
The property is in the city of FOUNTAIN VALLEY, County of ORANGE

RECONTRUST COMPANY,  N.A., as the duly appointed Trustee (or successor Trustee or substituted
Trustee), under a Deed of Trust referred to below, and herein called "Trustee", does hereby grant without
covenant or warranty to:

RJ Comm Properties, Inc.

herein called Grantee, the following described real property situated in ORANGE County, California:

SEE ATTACHED LEGAL DESCRIPTION

This conveyance is made pursuant to the powers conferred upon Trustee by the Deed of Trust executed by
EMILIO VASQUEZ, A SINGLE MAN, as Trustor, recorded on 09/28/2005, Instrument Number
2005000768561 ( or Book , Page ) Official Records in the Office of the County Recorder of ORANGE
County.

All requirements of law regarding the recording and mailing of copies of the Notice of Default and
Election to Sell, and the recording, mailing, posting, and publication of the Notice of Trustee's Sale have
been complied with.

CATRSTEEDEED_2012.10.0_10/2012

TS No. 11-0084642

Title Order No. 11-0068004

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its power under said Deed of Trust sold said real property at public auction on 02/11/2013.  Grantee, being highest bidder at said sale became the purchaser of said property for the amount bid, which amount was $668,000.00.

DATE: _____ FEB 1 5 2013

RECONTRUST COMPANY, N.A.

BY: _____ FEB 1 5 2013

**Darlene Real-Gomez, Asst. Vice President**

State of California

County of _____ Ventura _____ )

On _____ FEB 1 5 2013 _____ before me, _____ Karen Krajci _____, notary public, personally appeared _____ Darlene Real-Gomez _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Karen Krajci_ (Seal)

Karen Krajci

> KAREN KRAJCI
> Commission # 1879544
> Notary Public - California
> Los Angeles County
> My Comm. Expires Feb 7, 2014

CATRSTEEDEED_2012.10.0_10/2012

CLTA Guarantee Form No. 22 (Revised 09-12-08)

EXHIBIT A

REF. NO. 2011-84642

LEGAL DESCRIPTION

LOT 31 OF TRACT NO. 7013, IN THE CITY OF FOUNTAIN VALLEY, COUNTY OF
ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 262 PAGE(S)
20 AND 21, OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPT THEREFROM AN UNDIVIDED ONE-HALF INTEREST IN ALL OIL, GAS,
MINERALS, OTHER HYDROCARBON SUBSTANCES AND UNDERGROUND WATER
LYING BELOW A DEPTH OF 500 FEET, BUT WITH NO RIGHT OF SURFACE ENTRY,
AS PROVIDED IN DEED RECORDED IN BOOK 9414 PAGE 200, OFFICIAL RECORDS.

7

## AFFIDAVIT AND VERIFICATION

### (CCP § 2015.5)

STATE OF CALIFORNIA                    )
                                       ) ss
COUNTY OF ORANGE                       )

I, EMILIO VASQUEZ, Plaintiff in the above-entitled action against Defendants, BANK OF AMERICA, N.A.; THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-58; RECONTRUST COMPANY, N.A.; AND DOES 1 TO 10, inclusive, have read the foregoing verified complaint and know the contents thereof.

I certify that the same is true to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances.

This lawsuit is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The claims, defenses, and other legal contentions therein are warranted by existing law, or by a non-frivolous argument for the extension, modification or reversal of existing law, or the establishment of new law.

The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

1    I declare under penalty of perjury under the laws of the State of California that the foregoing is

2    true and correct.

3         DATED: November 10, 2014              *Emilio Vazquez*

4                                            EMILIO VASQUEZ

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EMILIO VASQUEZ v. BANA. – VERIFIED COMPLAINT FOR DAMAGES

# EXHIBIT  B

*12·3·14   10:30*

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

BANK OF AMERICA, N.A.; THE BANK OF NEW YORK MELLON
FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

EMILIO VASQUEZ,

| FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|
| **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**12/01/2014** at 12:31:29 PM<br>Clerk of the Superior Court<br>By Davon Velasquez, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Orange County Superior Court | CASE NUMBER:<br>*(Número del Caso):*<br>30-2014-00759017-CU-OR-CJC |
|---|---|

Central Justice Center

700 W. Civic Center Drive, Santa Ana, CA 92701

Judge David T. McEachen

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
JOHN E. MORTIMER, ESQ. 43980 Mahlon Vail Circle, Suite 806 Temecula, CA 92592 (951) 297-1504

| DATE:<br>*(Fecha)* 12/01/2014 ALAN CARLSON, Clerk of the Court | Clerk, by<br>*(Secretario)* *Davon Velasquez* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [✓] on behalf of *(specify):*

   under: [✓] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)      [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)      [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [✓] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: Emilio Vasquez v. Bank of America, N.A. | CASE NUMBER: 30-2014-00759017 |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

[ ] Plaintiff    [✓] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-58, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-58; RECONTRUST COMPANY, N.A.; AND DOES 1 TO 10, inclusive,

Page __2__ of __2__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| JOHN E. MORTIMER, ESQ. (SBN: 130526) <br> THE LAW OFFICES OF JOHN E. MORTIMER <br> 43980 Mahlon Vail Circle, Suite 806 <br> Temecula, CA 92592 <br> TELEPHONE NO.: (951)297-1504   FAX NO.: <br> ATTORNEY FOR *(Name):* Plaintiff, Emilio Vasquez | **ELECTRONICALLY FILED** <br> Superior Court of California, <br> County of Orange <br><br> **12/01/2014** at 12:31:29 PM <br> Clerk of the Superior Court <br> By Davon Velasquez, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Orange
STREET ADDRESS: 700 Civic Center Drive
MAILING ADDRESS: same
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME:
Emilio Vasquez v. Bank of America, N.A. et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited <br> (Amount <br> demanded <br> exceeds $25,000) | [ ] Limited <br> (Amount <br> demanded is <br> $25,000 or less) | [ ] Counter  [ ] Joinder <br> Filed with first appearance by defendant <br> *(Cal. Rules of Court, rule 3.402)* | | 30-2014-00759017-CU-OR-CJC |
| | | | | JUDGE: Judge David T. McEachen <br> DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[✓] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* 8 CAUSES OF ACTION
5. This case [ ] is  [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 10, 2014

JOHN E. MORTIMER, ESQ. (SBN: 130526)
(TYPE OR PRINT NAME)                               (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov